UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

SHERRY H.[1],                                    )
                                                 )
          Plaintiff,                             )
                                                 )
     v.                                          )     CIVIL NO. 4:20cv52
                                                 )
KILOLO KIJAKAZI, Acting                          )
Commissioner of Social Security,                 )
                                                 )
          Defendant.                             )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act

provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the

transcript of the record including the evidence upon which the findings and decision complained

of are based. The court shall have the power to enter, upon the pleadings and transcript of the

record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the case for a rehearing." It also provides, "[t]he findings of the

[Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42

U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1.    The claimant last met the insured status requirements of the Social Security Act on March 31, 2018.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 21, 2013 thrugh her date last insured of March 31, 2018 (20 CFR 404.1571 *et seq*).

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical, thoracic and lumbar spine with radiculopathy; osteoporosis, right hip mild degenerative changes and labral tear; and obesity (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work a defined in 20 CFR 404.1567(b) except she could never climb ladders, ropes or scaffolds but could occasionally climb ramps, stairs, balance and stoop, kneel, crouch or crawl.

6.    Through the date last insured, the claimant was capable of performing past relevant work as a customer complaint clerk (DOT #241.367-014) and as an insurance agent (DOT # 250.257-010) as defined by the DOT/generally performed in the national economy.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant was not under a disability, as defined in the Social Security Act, at any time from December 21, 2013, the alleged onset date, through March 31, 2018, the date last insured (20 CFR 404.1520(f)).

(Tr. 17-29).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits.

The ALJ's decision became the final agency decision when the Appeals Council denied review.

This appeal followed.

Plaintiff filed her opening brief on May 11, 2021.  On July 26, 2021 the defendant filed a

3

memorandum in support of the Commissioner's decision to which Plaintiff replied on August 16,

2021. Upon full review of the record in this cause, this court is of the view that the

Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See
Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-

91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test

as follows:

> The following steps are addressed in order: (1) Is the claimant
> presently unemployed? (2) Is the claimant's impairment "severe"?
> (3) Does the impairment meet or exceed one of a list of specific
> impairments? (4) Is the claimant unable to perform his or her
> former occupation? (5) Is the claimant unable to perform any other
> work within the economy? An affirmative answer leads either to the
> next step or, on steps 3 and 5, to a finding that the claimant is
> disabled. A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present

case, Step 4 was the determinative inquiry.

In September 2014, Plaintiff established care with a primary care provider, Dr. Alejandro

Alvarez (Tr. 607–10, 687–90). She reported a history of arthritis especially in her left hip (Tr.

608). On examination, she had an unspecified limited range of motion, but no pain with range of

motion of her left hip, and her gait and motor strength were normal (Tr. 608–09). Plaintiff saw a

podiatrist in September and October 2014 related to an ingrown toenail; her gait, range of motion

of the feet and ankles, and lower extremity strength and stability findings were normal (Tr. 21,

4

565, 568).

In December 2014, Plaintiff saw Dr. Alvarez and reported bilateral hand pain; on examination, she had mild tenderness of the bilateral first metacarpal joints (Tr. 21, 630–31). X-rays of the hands showed mild osteoarthritis of a few joints (Tr. 21, 598, 618, 696, 701).

In June 2015, Plaintiff underwent a consultative examination (Tr. 21, 633–38). Most examination findings were normal—including gait, muscle strength, joint range of motion, and gross manipulation and grip strength in both hands—although Plaintiff had crepitus in her right knee and tenderness in her lower back and in the mid-foot of her left foot (Tr. 21, 635–36, 638).

In July 2015, Plaintiff sought emergency room care after a fall down some steps after consuming alcohol (Tr. 21–22, 703, 841–45). She had lost consciousness after the fall, but had no pain complaints, including back pain, and no acute brain or spine injuries (Tr. 703–07). Plaintiff sought treatment approximately 10 days later, however, for the gradual onset of pain radiating in her left buttock and leg, with numbness and tingling in her left foot (Tr. 660, 662–64, 666). Since the fall, she had flown to Las Vegas and done "lots of walking" (Tr. 22, 660, 662, 664, 666). On examination, she had a steady gait, but pain with palpation of her left sacroiliac joint area (Tr. 663, 665, 667). Plaintiff was given Voltaren and Flexeril and referred to her primary care provider (Tr. 668, 670). Plaintiff saw Dr. Alvarez a few days later (Tr. 624–28). Plaintiff had a normal gait, sensation, strength, and reflexes (Tr. 22, 626). Dr. Alvarez ordered an MRI of the lumbar spine, which showed a herniated disc fragment compressing the L4 nerve root (Tr. 22, 691, 848).

Plaintiff saw a spine surgeon in early September 2015, reporting low-back and right groin pain, but that the left leg radiculopathy symptoms she developed after the fall had resolved (Tr. 724–26, 740–42). On examination, Plaintiff had diffuse pain across lumbar spine, but negative

straight leg raising, full motor strength, and normal reflexes (Tr. 22, 725). X-rays showed

degenerative spondylolisthesis at L4-5 (Tr. 22, 725). The doctor noted that with regard to the

prior MRI showing a disk herniation, Plaintiff was "completely asymptomatic at this point" and so

there was no need to address this other than some physical therapy for Plaintiff's low back (Tr. 22,

726). The doctor ordered imaging of the hip (Tr. 726), which showed a labral tear and

degenerative changes, including mild osteoarthritis, in the right hip (Tr. 22, 727–38, 758–69).

Later in September 2015, Plaintiff saw a hip specialist (Tr. 22, 721–23). On examination, she had

pain with flexion and external rotation of the right hip, decreased range of motion secondary to

pain, was mildly tender of the right inguinal region, and had an antalgic gait (Tr. 22, 721). Plaintiff

was prescribed Relafen (Tr. 721–23).

Meanwhile, Plaintiff saw Dr. Alvarez in September 2015 for completion of disability

paperwork (Tr. 22, 619–23). His examination noted limited range of motion of the bilateral hands

and wrists and of the left foot due to pain (Tr. 22, 621–22).

Plaintiff underwent a second consultative examination on January 25, 2016 (Tr. 22,

799–804) Most examination findings were normal, although Plaintiff had tenderness in her lumbar

spine and the dorsum of the left foot, and pain when she squatted and with movement of her

lumbar spine (Tr. 22, 800–01).

Plaintiff returned to the orthopedic specialists on January 27, 2016 (Tr. 22, 807-09). On

examination, she had a limping gait on the right, tenderness in the both hips, and 3/5 flexion and

abduction strength in both hips (Tr. 22, 808–09). X-rays showed mild degenerative changes of the

hip with fairly well maintained joint spaces (Tr. 809). The plan was for Plaintiff to return as needed

after completing physical therapy for her back (Tr. 22–23, 809). Plaintiff later reported attending

6

one physical therapy session (Tr. 1194).

In March and April 2016, Plaintiff saw Dr. Alvarez and reported chronic neck pain (Tr. 818–21, 823–25). On examination in April, she had decreased range of motion of the neck due to pain (Tr. 23, 820). X-rays and an MRI showed minimal to mild multilevel degenerative disc disease of the cervical spine (Tr. 23, 812, 830, 854–55).

In July 2016, Plaintiff underwent a third consultative examination (Tr. 23, 860–63). Many examination findings were normal (such as normal upper and lower extremity strength and full grip strength), but Plaintiff was also noted to have a wide-based gait, pain in the right hip with range of motion and palpation, a positive straight leg test on the left lower extremity, tenderness on the dorsal surface of the left foot, an unsteady tandem gait, and reduced range of motion in the cervical spine, right shoulder, and right hip (Tr. 23, 861, 863).

Plaintiff established care with a new primary care provider in November 2016 (Tr. 867, 872–74). Plaintiff reported back pain, right hip pain, and arthritis (Tr. 23, 872). Examination findings were normal, including normal range of motion of the neck (Tr. 23, 872). In November 2017, Plaintiff reported a one-month history of right shoulder pain with decreased range of motion (Tr. 23, 1051). On examination, she had limited range of motion in her right shoulder and tenderness in the upper deltoid (Tr. 23, 1052–53). An x-ray showed no acute fractures or dislocations (Tr. 23, 1093). Plaintiff was given some home physical therapy exercises (Tr. 1054).

In January 2018, Plaintiff established care with a neurology and pain management specialist, Dr. Julian Ungar-Sargon, reporting neck pain, back pain, and right shoulder pain (Tr. 1276). On examination, Plaintiff had tenderness in the cervical, thoracic, and lumbar spine, and over the sacroiliac joint and trochanters (Tr. 1278). She also reported loss of sensation in the

7

lower extremities (Tr. 1278). Plaintiff then had electrophysiological studies (Tr. 23, 1164–76).

Three were normal (Tr. 1166, 1173, 1176), but a nerve conduction study showed right C4-5

radiculopathy and bilateral L4-5 lumbar radiculopathy (Tr. 23, 1170). A CT of the lumbar spine in

January 2018 showed osteoarthritic and discogenic changes, including mild bulging of the L4-5

disk that appeared to come into contact with the exiting right L4 nerve root (Tr. 23–24, 1177–78).

Plaintiff also saw her primary care provider in January 2018 for disability paperwork (Tr.

24, 1194, 1316). On examination, she had limited range of motion in her neck and back, and

"straight leg raise was only 15% bilaterally as it caused back pain" (Tr. 24, 1195, 1317).

In support of remand, Plaintiff first argues that the ALJ did not apply the correct legal

standards when evaluating the symptoms and limitations.  The Commissioner, however, contends

that the ALJ properly evaluated Plaintiff's symptoms. It is well-settled that a claim for disability

benefits cannot be supported by the claimant's subjective complaints alone. *See* 20 C.F.R. §

404.1529(a) (the ALJ considers the extent to which symptoms can reasonably be accepted as

consistent with the objective medical and other evidence); *Sienkiewicz v. Barnhart*, 409 F.3d 798,

804 (7th Cir. 2005). The Seventh Circuit has held that "[b]ecause the ALJ is in the best position to

determine a witness's truthfulness and forthrightness, this court will not overturn an ALJ's

credibility determination unless it is patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310–11

(7th Cir. 2012) (internal quotations and citations omitted); *see also Burmester*, 920 F.3d at 510

(citing *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)) ("We may disturb the ALJ's

credibility finding only if it is 'patently wrong.'")). "It is only when the ALJ's determination lacks

any explanation or support that [the court] will declare it to be patently wrong and deserving of

reversal." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008) (quotation and citations

omitted).

An ALJ's evaluation of a claimant's subjective allegations regarding pain or other symptoms is a two-step process. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029; *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004); *Jens*, 347 F.3d at 213. First, objective medical evidence must demonstrate the existence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 404.1529(b); SSR 16-3p at *3–4. If this threshold is passed, the ALJ then considers the intensity, persistence, and limiting effects of the symptoms based on all of the evidence in the record, including objective medical evidence, opinions from medical and non-medical sources, and factors listed in the regulations such as daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of medication; treatment of symptoms other than medication; and any measures used to relieve the symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p at *4–7. The ALJ considers whether there are inconsistencies or conflicts in the evidence, and a claimant's symptoms will be determined to diminish the capacity for basic work activities to the extent that the alleged limitations and restrictions due to the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4).

As noted, Plaintiff alleges that the ALJ did not apply the correct legal standard when evaluating Plaintiff's allegations regarding her symptoms and limitations. Plaintiff contends that, because ALJs base their decisions on the preponderance of evidence in the hearing record, if a preponderance of the evidence supports the claimant's description of her symptoms and limitations, those symptoms and limitations must be reflected in the RFC. Plaintiff cites no

authority for this proposition, and it ignores that ALJs have specific instructions for evaluating a claimant's symptoms and statements concerning the intensity, persistence, and limiting effects of these symptoms set forth in the regulations and applicable SSRs. This specific analysis is the controlling legal standard that the ALJ applies. Furthermore, this Court does not reconsider facts or make credibility determinations. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Jens*, 347 F.3d at 212). Rather, under the deferential substantial evidence standard of review that applies here, the issue before this Court is whether a reasonable mind might accept the evidence as adequate to support the ALJ's conclusion. *Id*. If so, this Court must affirm. This Court does not undertake a *de novo* review of the medical evidence presented to the ALJ, but rather "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder*, 592 F.3d at 413. As recently reaffirmed by the Seventh Circuit, "So long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn his credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (quoting *Curvin*, 778 F.3d at 651)." Patently wrong is a "high threshold" and it applies "'only when the ALJ's determination lacks any explanation or support.'" *Ray v. Saul*, No. 20-2801, —F. App'x —, 2012 WL 2710377, at *4 (quoting *Elder*, 529 F.3d 408 at 413–14).

Plaintiff also alleges that the ALJ committed legal error by including boilerplate language in the decision. The Seventh Circuit has repeatedly rejected Plaintiff's argument that use of such language indicates that the ALJ did not use the appropriate standard or that the decision must be remanded. *Gedatus*, 994 F.3d at 900 (rejecting an argument that the language means the ALJ did not use the appropriate preponderance-of-the-evidence standard and stating: "[W]e do not read the ALJ's language that way. It is clear to us, given the context, that the ALJ merely used a polite

10

way to say the weight of the evidence did not support all her claims."); *see also Schomas v. Colvin,* 732 F.3d 702, 708 (7th Cir. 2013) ("[t]he use of boilerplate is innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony"); *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013) (" [T]he simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination."); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless.").

The real issue, then, is whether the ALJ provided a reasonable explanation and support for finding that the weight of the evidence did not support all of Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms. In this case, Plaintiff alleged that she could not lift, maneuver, or walk (Tr. 104) and had pain with any kind or bending or consistent sitting and walking (Tr. 109). She testified that she had discomfort all the time at a level of six or seven out of ten and, on a bad day, "over a ten" (Tr. 109). In addition, the only things she could do with her hands was "maybe rub" and she could not open cans, use a stapler, or write, and could only "poke" her finger if typing (Tr. 110–11). She would "immediately" have pain using her left hand and could only use her right hand for about 10–15 minutes before developing pain (Tr. 111–12). When sitting, standing, or walking, she had pain in her lower back shooting down her right leg, and in her hip (Tr. 113–14). She testified that she spent her day in a recliner or lying in bed watching television and only got up to fix something to eat (Tr. 113, 115). She took Advil or Aleve for her pain (Tr. 102, 109).

The ALJ summarized these allegations and then noted that Plaintiff's statements about the

intensity, persistence, and limiting effects of her symptoms was inconsistent with the medical evidence (Tr. 21). The ALJ proceeded to summarize the medical evidence, noting the multiple examinations showing a normal ability to walk, normal grip strength, and, generally, limited or intermittent abnormal physical findings (Tr. 21–24). The ALJ then discussed specific reasons for not finding Plaintiff's allegations supported by the evidence (Tr. 29). The ALJ noted that despite alleging disabling pain, Plaintiff's pain medication was limited to Aleve or Advil (Tr. 29). Furthermore, the ALJ noted that despite alleging disabling pain, Plaintiff had flown to Las Vegas in 2015 and reported doing a lot walking (Tr. 29). The ALJ also noted Plaintiff's testimony that she could drive unassisted and engaged in other activities such as completing continuing education to renew her insurance agent license and performing part-time work after her alleged onset date (Tr. 29, 100–04). Finally, the ALJ noted the many normal physical examinations in the record documenting normal range of motion, normal strength, and normal sensation (Tr. 28).

Plaintiff, however, contends that this analysis was "erroneously vague". Clearly, though, the ALJ discussed specific evidence and reasons in support of her conclusion as summarized above (Tr. 29). Plaintiff also claims that the ALJ does not explain the RFC assessment. However, it is evident from the decision that the ALJ properly considered the medical evidence of record, including specific opinion evidence that the ALJ relied upon in deciding the RFC.

Plaintiff contends that the factors that the ALJ considered did not explain why the ALJ did not fully believe Plaintiff's allegations. This argument ignores the obvious contradictions and inconsistencies that are shown in the medical evidence that the ALJ discussed, and also ignores the ALJ's explicit analysis. For example, Plaintiff alleged that she became disabled in December 2013 and could not lift or walk or use her hands, but the contemporary records do not document

limitations to that degree, with generally mild findings such as tenderness or some loss of range of motion, but nothing that would support an inability to lift, sit, stand, or walk to the degree alleged by Plaintiff. Additionally, abnormal examination findings related to Plaintiff's hands are limited to tenderness (Tr. 21, 631) and Plaintiff was consistently found to have normal grip strength and ability to manipulate (Tr. 22, 636, 803). Also, Plaintiff had a fall in July 2015 (Tr. 703–07), but shortly after this fall she went to Las Vegas and, by her own report, did a lot walking (Tr. 660). Thus, the ALJ's consideration that, despite alleging doing little more than sitting in a recliner, Plaintiff was actually able to travel to Las Vegas and do a lot walking was entirely reasonable. Plaintiff argues, incorrectly, that the ALJ did not mention Plaintiff's need for medical treatment after this trip. However, the ALJ noted  this examination in which Plaintiff was ambulating normally and had normal gait, sensation, and strength (Tr. 22, 663). And although an MRI showed a herniated disc (Tr. 22, 691), by the time Plaintiff saw a spine surgeon in September 2015, she was "completely asymptomatic" with respect to the disc herniation (Tr. 22, 726). Thus, whatever exacerbation of symptoms Plaintiff had in July appear to have resolved by September 2015.

The Commissioner contends that Plaintiff's argument that the ALJ equated Plaintiff's ability travel to Las Vegas with an ability to work is unsupported. The Commissioner points out that the ALJ considered this as an inconsistency between the contemporaneous record and Plaintiff's allegations, not as proof that Plaintiff could work. Nor was it improper for the ALJ to consider Plaintiff's part-time work and work-like activities, such as participating in continuing education, as evidence that tended to detract from Plaintiff's allegations.

Plaintiff also assets that the ALJ did not consider that Plaintiff took medications other than Advil and Aleve. Plaintiff ignores the ALJ's discussion of occasions when Plaintiff was prescribed

other medications, such as in November 2016 (Tr. 23, 873) and November 2017 (Tr. 23, 1062).

However, it was entirely relevant for the ALJ to consider that despite alleging pain beyond even

the extreme pain of 10 on a scale of one to ten (Tr. 109), that Plaintiff had very limited treatment

and continued to rely primarily on  over-the- counter pain medication. This limited treatment

reasonably tends to detract from Plaintiff's allegations regarding the severity of her pain. Plaintiff

further contends that the ALJ did not consider that Plaintiff underwent hip injections, but the cited

record described an injection of dilute contrast related to the imaging of the right hip (Tr. 764).

The ALJ reasonably did not discuss the other cited record, regarding an injection treatment

Plaintiff had in February 2019 (Tr. 1327), because this was well past the period under

consideration, which ended on Plaintiff's date last insured of March 31, 2018 (Tr. 17).

 This Court finds that the ALJ properly applied the two-step analysis and factors described

in the regulations and SSR 16-3p and supported her findings with references to substantial

evidence. There is no basis for remand on this point.

 Next, Plaintiff argues that the ALJ did not apply the correct legal standards when

evaluating the opinion evidence.  However, the ALJ based the RFC assessment in significant part

on the medical opinion of a testifying medical expert, Dr. Goldstein (Tr. 24, 43–68). The ALJ

gave Dr. Goldstein's opinion great weight because he had an opportunity to review all of the

evidence of record and because the opinion appeared consistent with the evidence of record (Tr.

24). Specifically, at a supplemental hearing in April 2019, Dr. Goldstein testified that in his opinion

Plaintiff would be able to function at the light level of activity with no climbing of ladders, ropes,

or scaffolds, and occasionally climbing ramps and stairs and engaging in other postural activities

(balancing, stooping, kneeling, crouching, and crawling) (Tr. 24, 46). Dr. Goldstein noted that in

14

November 2016, Plaintiff had right hip pain from a labral tear, but the range of motion was normal, and that there was no treatment in 2017 (Tr. 24, 46–47). The ALJ specifically asked about an opinion from another source, Dr. Ungar-Sargon, that Plaintiff could never use either hand, but Dr. Goldstein stated that he did not see this in the physical examinations (Tr. 48, 1283). Dr. Goldstein also considered the consultative examination in 2016 and the findings, including the abnormal findings of a wide-based gait and positive straight-leg raising test on the left, and explained that this was the basis for his opinion that Plaintiff could perform light work and for the lack of restrictions in handling, fingering, and feeling, because Plaintiff had normal finger adduction and opposition in both hands and full grip strength (Tr. 48–49, 800–03). Plaintiff's attorney also specifically asked about the positive straight leg raising text in the July 2016 consultative examination (Tr. 861) and in a January 2018 primary care record (Tr. 1317), and Dr. Goldstein testified that when considered together with the range of motion and strength findings, he still concluded that Plaintiff would be capable of a light level of activity (Tr. 52–56). Dr. Goldstein further testified that despite the imaging regarding a disc herniation, one would have to see the physical examination to see how that affected the individual, and based on the range of motion and normal neurologic examination, he was of the opinion that Plaintiff could function at the light level of exertion (Tr. 24, 61–68). The Commissioner argues that this opinion alone represents substantial evidence that supports the ALJ's RFC assessment.

Plaintiff contends that the ALJ committed legal error because he gave more weight to Dr. Goldstein's opinion than to the opinions of treating providers. However, it is clear that the ALJ properly weighed conflicting medical opinion evidence and gave good reasons supported by substantial evidence for the weight given to each opinion. Due to the conflicting opinion evidence,

it was not legal error for the ALJ to give greater weight to an opinion from an expert such as Dr. Goldstein rather than to opinions of treating providers. *See Karr v. Saul*, No. 20-1939, — F.3d —, 2021 WL 684329, at *2 (7th Cir. Feb. 23, 2021) (citing *Bates v. Colvin*, 736 F.3d 1093, 1099–100 (7th Cir. 2013)) ("Once well-supported contrary evidence is introduced, however, a treating physician's opinion becomes just another piece of evidence for the ALJ to evaluate.").

The first conflicting opinion at issue was from Plaintiff's primary care provider, Dr. Alvarez, who submitted a form in September 2015 indicating that Plaintiff could never lift even 10 pounds; could only sit for five minutes at a time or for an hour total, stand for 15 minutes at a time or for 45 minutes total, and walk for two minutes at a time and 30 minutes total; could only occasionally use her right hand and never use her left hand for handling and reaching; and never balance, stoop, kneel, crouch, or crawl (Tr. 711–16). Dr. Alvarez explained these extreme limitations with reference to a positive straight leg test at five degrees bilaterally; bilateral wrist arthritis and arthritis of the left foot; and the herniated disc and lumbar degenerative disc disease generally (Tr. 711–16).

The ALJ considered this opinion, but gave it little weight (Tr. 25). The ALJ first noted that on examination in June 2015, Plaintiff had a normal gait, full strength in her upper and lower extremities, full range of motion in all her joints, although she had tenderness in her lower back (Tr. 25, 635–37). The ALJ further noted that on September 2, 2015 (*i.e.*, the day before Dr. Alvarez completed the opinion form), Plaintiff had an examination with a spine surgeon for evaluation of back pain and could heel and toe walk, do a deep knee bend, bend forward to touch her toes, and had a negative straight leg raising test and normal strength (Tr. 25, 725, 741). Indeed, the treating specialist specifically noted that despite the imaging of a disc herniation

showing nerve root compression from July 2015, Plaintiff was completely asymptomatic and his only recommendation was for physical therapy (Tr. 25, 726, 742).

The ALJ further noted that a few months after Dr. Alvarez's opinion, Plaintiff had another consultative examination and had a normal gait, full strength in her upper and lower extremities, normal sensation, normal finger adduction and opposition in both hands, could pick up small objects with both hands, was able to heel, toe, and tandem walk without difficulty, could fully squat (albeit with pain) and had full range of motion of the lumbar spine (despite some pain on range of motion) (Tr. 25, 800–03). The ALJ also noted Dr. Goldstein's opinion that a positive straight leg raising test at five degrees reported by Dr. Alvarez was difficult to believe and was more typical of an acute injury as the person would not be able to walk (Tr. 25–26, 58–59, 622, 712). Finally, the ALJ also considered further examinations in 2016 and 2017, showing a normal gait, strength, sensation, and range of motion, (*i.e.*, not showing significant clinical signs indicative of continuing nerve root involvement with respect to Plaintiff's lumbar spine) (Tr. 26, 820–21, 872, 958, 1052–53). In light of all this evidence contradicting Dr. Alvarez's opinion, the ALJ reasonably concluded that the significant limitations opined by Dr. Alvarez did not appear supported by the record (Tr. 26).

While alleging error in the ALJ's consideration of Dr. Alvarez's opinion, Plaintiff takes issue with only one of the several pieces of evidence that the ALJ relied upon, namely Dr. Goldstein's opinion that the notation of a straight-leg raising test at five percent was "hard to believe". She suggests that the ALJ was obliged to follow-up with Dr. Alvarez before doubting the veracity of this notation. Even assuming, *arguendo*, that Dr. Goldstein's opinion in this regard was somehow unreliable, Dr. Alvarez's opinion is plainly inconsistent with other substantial,

17

contemporaneous evidence that the ALJ specifically discussed. Most notably, the day before Dr. Alvarez completed this form, Plaintiff saw a spinal surgeon who found no positive straight-leg raising and specifically stated that Plaintiff was "completely asymptomatic" with respect to her disc herniation (Tr. 725–26). Similarly, as the ALJ also noted, with respect to the use of her hands, for example, consultative examinations both before and after Dr. Alvarez's completed the form document that Plaintiff had normal adduction and opposition in both hands and had normal gross manipulation and full grip strength (Tr. 25, 636, 801–802). Thus the ALJ had more than enough evidentiary support for his decision to afford Dr. Alvarez's opinion little weight.

Plaintiff next takes issue with the ALJ's decision to give little weight to opinions from Dr. Ungar-Sargon, a neurology and pain management specialist Plaintiff saw in January 2018 (Tr. 1278–80) and who conducted the neurophysiological testing (Tr. 1164–76). Dr. Ungar-Sargon wrote on a treatment note that Plaintiff was "Totally Disabled since 2009" and met Listing 1.04 (*i.e.*, 20 C.F.R. part 404, subpart P, app. 1, § 1.04, addressing disorders of the spine) (Tr. 1280). Dr. Ungar-Sargon also completed a more detailed opinion form indicating, in sum, that Plaintiff was unable to perform even sedentary work, including that Plaintiff required a cane to walk more than a block and could never use her hands to reach, handle, finger, or feel (Tr. 1281–86). The ALJ gave little weight to Dr. Ungar-Sargon's statement that Plaintiff was disabled because it was provided after one visit and Dr. Ungar-Sargon did not provide any support for it other than to make a generalized statement, *i.e.,* that Plaintiff met a listed impairment (Tr. 26). The ALJ's reasons are supported by the evidence. Dr. Ungar-Sargon did not have first-hand knowledge of Plaintiff's condition prior to January 2018, he provided no supporting explanation of the basis for the opinion, and none is evident from his physical examination because the abnormal findings—

18

tenderness and some loss of sensation and strength in the lower extremities—are insufficient to meet any paragraph of Listing 1.04.(Tr. 20, 1278). Plaintiff has not challenged the ALJ's finding that Plaintiff's impairment did not meet or medically equal the severity of any listed impairment (Tr. 20). Furthermore, a statement that an individual is disabled is not a "medical opinion" as defined in the regulations, but rather an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). No special significance is given to the source of an opinion on issues reserved to the Commissioner. *Id*.

Plaintiff criticizes the ALJ's decision to give little weight to Dr. Ungar-Sargon's statements because the ALJ gave "some weight" to the consultative examiner's opinions, a source who had also only seen Plaintiff once. However, Dr. Ungar-Sargon made a conclusory statement that Plaintiff was disabled since 2009, while the consultative examiner offered specific opinions on functional abilities that were directly related to the examination itself rather than to a generalized decades-long period well exceeding the scope of first-hand information (Tr. 25–26, 636–37, 802).

The ALJ also considered the opinion form from Dr. Ungar-Sargon and gave additional reasons for giving it little weight (Tr. 26). As with the opinions discussed above, the ALJ noted the significant countervailing evidence that did not support the degree of limitations in the opinion, including the normal examination findings in September 2015 (725–26), on consultative examination in January 2016 (Tr. 800), and on examinations in 2016 and 2017 (820–21, 872, 958, 1052–53). The ALJ further noted that Plaintiff completed continuing education requirements and engaged in part time work, which the ALJ noted seemed to directly contradict the opinion that Plaintiff could never handle, finger, and feel (Tr. 26, 1285).

Plaintiff argues that the ALJ's reasons were deficient because the ALJ "did not confront

19

the many abnormal findings upon which Dr. Ungar relied". As an initial matter, however, Dr. Ungar-Sargon did not relate his opinions to any particular findings or supporting explanation (Tr. 1281–86). To the extent Plaintiff suggests that the ALJ should have discussed Dr. Ungar-Sargon's own abnormal findings of tenderness, loss of sensation and strength in the lower extremities, and the one abnormal study indicating Plaintiff had cervical and lumbar radiculopathy (Tr. 1170, 1278), these findings alone do not compel the conclusions in Dr. Ungar-Sargon's opinion. The ALJ's explanation for giving little weight to Dr. Ungar-Sargon's opinions shows the ALJ considered the conflicting evidence in the record, including the many examinations that did not indicate any similar findings of lower extremity weakness and loss of sensation (Tr. 26). Moreover, the ALJ had the benefit of Dr. Goldstein's consideration of all of this evidence, specifically including the neurophysiological studies, which Dr. Goldstein did not consider as indicating an impairment that would keep Plaintiff from using her arms and legs (Tr. 49–52).

The ALJ similarly considered an opinion form submitted by Ms. Larson, a nurse practitioner who provide some primary care to Plaintiff (*see, e.g.*, Tr. 858, 1194), indicating that Plaintiff was unable to perform even sedentary work (Tr. 27, 1179–84). The ALJ gave this opinion little weight for the same reasons discussed with respect to other opinion evidence, but also noted that Ms. Larson was not an "acceptable medical source" as defined in the regulations with respect to claims filed prior to March 2017 (Tr. 27). 20 C.F.R. § 404.1502(a)(7).Plaintiff criticizes the ALJ for mentioning this because this factor would not apply to an application filed after March 2017, but this was not the only factor in the ALJ's decision and certainly not the sole reason for affording the opinion little weight.

The ALJ similarly considered an opinion from Dr. Louis Fuchs, who reviewed the record

at the ALJ's request and completed a form indicating that Plaintiff could lift and carry at the light level of exertion; sit, stand, and walk at the sedentary level of exertion, with additional postural, manipulative, and environmental limitations such as occasional reaching and no crawling, but also opined that Plaintiff did not meet Listings 1.04A or 1.02A or B because she was neurologically intact and her limbs were still effective (Tr. 1265–70, 1272–74). The ALJ gave this opinion "some weight," again noting the evidence of record supporting Plaintiff's continued ability to stand and walk, such as the findings of a normal gait and normal neurological examinations discussed above, and concluding that a limitation to only two hours of standing and two hours of walking did not appear well supported by the evidence of record (Tr. 27–28).

The ALJ considered an opinion from Dr. Marianne Nelson, another provider at Plaintiff's primary care clinic who appears to have first seen Plaintiff in July 2018, after Plaintiff's date last insured (Tr. 1304). Dr. Nelson completed an opinion form in March 2019 indicating that Plaintiff was limited to less than sedentary work (Tr. 1336–41). The ALJ gave this opinion little weight for the same reasons as with other such opinions, but also noted that this opinion was rendered almost one year after Plaintiff's date last insured.

Thus, contrary to Plaintiff's argument, the ALJ's decision shows that the ALJ properly considered each opinion in the record and gave good reasons, supported by substantial evidence of record, for giving greater weight to Dr. Goldstein's opinion than to more restrictive opinions in evidence (Tr. 24–28). There is no basis for remand on this issue.

Next, Plaintiff argues that the vocational findings are founded upon legal error and are not supported by substantial evidence. Past relevant work is work that a claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to

learn to do it. 20 C.F.R. § 404.1560(b). At step four of the sequential evaluation process, the ALJ

compares the claimant's RFC with the physical and mental demands of the claimant's past relevant

work. 20 C.F.R. § 404.1520(f); *see also* SSR 82-62, 1982 WL 31386, at *2–3. Having an RFC

sufficient to meet the physical and mental demands of past relevant work (either the specific job a

claimant performed or the same kind of work as it is customarily performed throughout the

economy) is generally a sufficient basis for a finding of that the claimant is not disabled. SSR

82-62, 1982 WL 31386, at *3. An ALJ may rely upon a vocational expert's testimony to

determine whether an individual can engage in his or her past relevant work. *See* 20 C.F.R. §

404.1560(b)(2). Plaintiff bears the burden of proof through the first four steps of the sequential

evaluation process. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).

      At step four, the ALJ found that, based on Plaintiff's RFC, Plaintiff remained capable of

performing her past relevant work as a customer-complaint clerk and as an insurance agent as

generally performed. (Tr. 29). In making this finding, the ALJ accepted the testimony of a

vocational expert that an individual with the RFC set forth in this decision would be capable of

performing these occupations. (Tr. 29, 72–73). This finding is well supported by the evidence as

the DOT categorizes the customer complaint clerk occupations as requiring only sedentary

exertion, the insurance agent occupation as requiring light exertion, and neither occupation

requires climbing, balancing, stopping, kneeling, crouching, or crawling. *See* 1991 WL 672355,

1991 WL 672355.

      Plaintiff argues that the ALJ was required to make specific findings regarding the physical

and mental demands of the past relevant work, and some additional "detailed description" of the

past relevant work. However, the DOT defines the relevant physical demands as related to

Plaintiff's RFC. The RFC assessment plainly fits within the physical demands of the occupations as defined in the DOT, and Plaintiff does not make any argument to the contrary.

Plaintiff further contends that the ALJ did not address mental limitations, manipulative limitations, or whether the combined effect of Plaintiff's impairments would prevent her from sustaining work on a regular and continuing basis. However, by definition, an RFC assessment is a conclusion that the Plaintiff is capable of sustaining work activity within the parameters of the RFC assessment on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *2. Plaintiff cites no evidence that would support that she required mental, manipulative, or any other additional limitations in the RFC assessment. The ALJ specifically considered the issue of mental limitations at steps two and three of the sequential evaluation process and found that Plaintiff's depression caused no limitation in any area of functioning (Tr. 19). Plaintiff has not challenged these findings or pointed to any evidence establishing a need for mental limitations in the RFC assessment. Similarly, the ALJ relied on substantial evidence that Plaintiff had normal manipulation and retained full grip strength in both hands (Tr. 636, 802), supporting the ALJ's decision not to including manipulative limitations in the RFC assessment. Because Plaintiff has not shown that the evidence compels greater restrictions, there is no basis for remand. *See Gedatus*, 994 F.3d at 900 ("We will reverse only if the record compels a contrary result." (internal quotation omitted).

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: August 30, 2021.

s/ William C.  Lee
William C. Lee, Judge
United States District Court

24